Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| GRETCHEN ROSARIO SILVA<br><br>Apelada<br><br>v.<br><br>NIXA SOTO RIVERA, POR SÍ Y EN REP. DE LA SLG. COMPUESTA CON ZUTANO DE TAL, ZORAYA CUNILLERA HERNÁNDEZ POR SÍ Y EN REP. DE LA SLG DE GANANCIALES COMPUESTA CON FULANO DE TAL., FULANO DE TAL Y OTROS<br><br>Apelantes | TA2025AP00626 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso número: PO2022CV00421<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Comparece la apelante, Zoraya Cunillera Hernández, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 17 de octubre de 2025, notificada el día 21 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Con Lugar la *Demanda* incoada por la apelada, Gretchen Rosario Silva. En su consecuencia, ordenó la devolución del dinero de la compraventa de un vehículo de motor por $8,200.00 y a satisfacer la cuantía de $10,000.00 por concepto de daños, cantidades por las cuales responden solidariamente las dos codemandadas.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

# I

El 25 de febrero de 2022, Gretchen Rosario Silva (Rosario Silva o apelada) incoó una *Demanda*[1] sobre daños y perjuicios en contra de Nixa Soto Rivera (Soto Rivera o codemandada) y Zoraya Cunillera Hernández (Cunillera Hernández o apelante), y sus respectivas Sociedades de Gananciales (en conjunto, codemandadas). Rosario Silva alegó que en julio de 2021, luego de ver un anuncio en la plataforma "Marketplace" de Facebook para la venta de un vehículo de motor marca Nissan, modelo Rogue del año 2013, se comunicó con Soto Rivera para obtener información. Arguyó que inspeccionó el vehículo, se percató de unos desperfectos mínimos y, que el 23 de julio de 2021, firmó un contrato de compraventa con Soto Rivera y tomó posesión del vehículo. Sostuvo que en ningún momento Soto Rivera le expresó que la dueña registral del vehículo era Cunillera Hernández.

Asimismo, alegó que, a los pocos días de comenzar a utilizar el vehículo, este empezó a mostrar fallas mecánicas y que el mismo se encuentra inservible, por lo que solicitó la devolución del dinero entregado. Sostuvo que Soto Rivera se rehusó a devolver el dinero. Alegó que Soto Rivera y Cunillera Hernández la indujeron a error y actuaron de forma dolosa en cuanto a que el vehículo estaba en buenas condiciones y sobre quién era la dueña registral del vehículo y que, de saber todo lo anterior, no lo hubiese adquirido. Sostuvo, además, que dichos actos culposos y negligentes por parte de Soto Rivera y Cunillera Hernández le provocaron daños económicos y angustias mentales.

Luego de múltiples trámites procesales, y en lo concerniente a la controversia que nos ocupa, el 18 de octubre de 2022, Cunillera Hernández presentó su *Contestación a Demanda, Defensas*

---

[1] Entrada Núm. 1 del Caso PO2022CV00421 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

*Afirmativas y Reconvención*[2]. Alegó que nunca fue parte del negocio jurídico entre Rosario Silva y Soto Rivera, y que no estaba en posesión del vehículo, ni este se encontraba bajo su control. Además, sostuvo que el 5 de junio de 2021 suscribió un documento privado sobre la venta del vehículo con Soto Rivera.

Pasados otros trámites procesales, el 11 de junio de 2025, Rosario Silva presentó una *Moción Sometiendo Evidencia Documental*[3] en la que sometió prueba cuya admisibilidad no estaba en controversia.[4] Además, sometió, como parte de la evidencia cuya admisibilidad sí estaba en controversia, un Acuerdo entre las partes demandadas del 5 de junio de 2021, firmado por Soto Rivera y Cunillera Hernández, sobre la venta del vehículo entre estas.

Posteriormente, luego de celebrado el juicio en su fondo, el 17 de octubre de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* que hoy nos ocupa, notificada el día 21 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Con Lugar la *Demanda* promovida por Rosario Silva. El foro sentenciador concluyó que Cunillera Hernández era la dueña del vehículo cuando Rosario Silva lo adquirió. Sostuvo que, a pesar de que Cunillera Hernández presentó el *Acuerdo Entre las Partes de Venta de Vehículo de Motor*[5], para probar que el 5 de junio de 2021 le había vendido el vehículo a Soto Rivera, dicho documento no es suficiente ni cumple con la legislación vigente para el traspaso de un vehículo de motor.

---

[2] Entrada Núm. 31 del Caso PO2022CV00421 en el SUMAC. La mencionada *Reconvención* fue desestimada, por medio de una *Sentencia Parcial* emitida el 14 de septiembre de 2023 (Entrada Núm. 41 del Caso PO2022CV00421 en el SUMAC).

[3] Entrada Núm. 77 del Caso PO2022CV00421 en el SUMAC.

[4] La referida prueba es: Exhibit I (Formulario de Selección del Seguro de Responsabilidad Obligatorio del 30 de abril del 2021); Exhibit II (Licencia del vehículo de motor); Exhibit III (Mensajes de textos entre la parte demandante y Nixa Soto); Exhibit IV (Factura ML Lube / Wash del 6/3/2021); Exhibit V (Factura Advance Auto Parts); Exhibit VI (Boleto Falta Administrativa 1 de agosto de 2021); Exhibit VII (Acuerdo de compraventa de vehículo de motor entre Gretchen Rosa[rio] Silva y Nixa Soto Rivera con fecha de julio 23 del 2012 y abajo tiene fecha de julio 23 del 2021).

[5] Anejo EXH A PTE CO DDA de la Entrada Núm. 77 del Caso PO2022CV00421 en el SUMAC.

En fin, concluyó que las actuaciones de ambas codemandadas fueron culposas y negligentes, lo cual causó daños a Rosario Silva. En su consecuencia, ordenó a las codemandadas a devolver el dinero de la compraventa del vehículo de motor por $8,200.00 y a satisfacer la cuantía de $10,000.00 por concepto de daños, ambas cantidades por las cuales debían responder solidariamente.[6]

Inconforme, el 2 de diciembre de 2025, la apelante presentó el recurso de epígrafe y señaló los siguientes errores:

> Cometió grave error de derecho el Tribunal [de Primera Instancia] al declarar con lugar la demanda, determinando responsabilidad solidaria de las co demandadas, a pesar de que la prueba que desfiló en el juicio claramente estableció que la co demandada apelante Cunillera Hernández no participó de la transacción de compraventa del vehículo a la demandante.

> Cometió grave error de derecho el Tribunal [de Primera Instancia] al realizar determinaciones de hecho cuya prueba no desfiló en el juicio ni fueron estipuladas por las partes.

> Cometió grave error de derecho el Tribunal [de Primera Instancia] al determinar una partida de daños por la cantidad de $10,000.00 de forma solidaria sobre la co demandada-apelante Zoraya Cunillera Hernández, sin haber desfilado prueba en el juicio que promoviera hacer tal determinación.

Así las cosas, el 4 de diciembre de 2025, Cunillera Hernández presentó una *Moción Sometiendo Transcripción de Juicio*. A la referida moción, la apelante adjuntó una Transcripción de la Prueba Oral (TPO), correspondiente al juicio en su fondo llevado a cabo el 17 de octubre de 2025.

Evaluado lo anterior, el 8 de diciembre de 2025, emitimos una *Resolución*, que notificamos el día 10 del mismo mes y año. En virtud de esta, dispusimos que la apelada tendría diez (10) días para estipular u objetar la TPO. Asimismo, que, una vez estipulada esta,

---

[6] Cunillera Hernández presentó una *Moción en Solicitud de Reconsideración* el 5 de noviembre de 2025 (Entrada Núm. 90 del Caso PO2022CV00421 en el SUMAC) la cual fue declarada No Ha Lugar por el foro primario el 9 de noviembre de 2025, notificada el día siguiente (Entrada Núm. 91 del Caso PO2022CV00421 en el SUMAC).

Cunillera Hernández tendría treinta (30) días para presentar su alegato suplementario, mientras que la apelada tendría treinta (30) días, contados a partir de la presentación del alegato suplementario de la apelante, para presentar su alegato en oposición.

El 22 de diciembre de 2025, Rosario Silva presentó una *Moción Solicitando Término Adicional*, en la que nos solicitó hasta el 30 de diciembre de 2025, para estipular u objetar la TPO. En igual fecha, emitimos y notificamos una *Resolución*, mediante la cual le concedimos a la apelada la prórroga solicitada. Así, en cumplimiento de la referida *Resolución*, el 30 de diciembre de 2025, la apelada presentó una *Moción en Cumplimiento de Orden*, en virtud de la cual estipuló la TPO.

Por su parte, el 7 de enero de 2026, Cunillera Hernández presentó un escrito que tituló *Alegato Suplementario de la Parte Apelante*, mientras que el 6 de febrero de 2026, Rosario Silva solicitó la concesión de una prórroga hasta el 16 de febrero de 2026, para presentar su alegato en oposición. Considerada la referida petición, emitimos una *Resolución*, mediante la cual le concedimos a la apelada la prórroga solicitada.

Así las cosas, en cumplimiento con nuestra orden, Rosario Silva presentó un escrito que tituló *Alegato en Oposición a Apelación*. En esencia, la apelada rechazó que el foro primario cometiera los errores señalados por Cunillera Hernández. En consecuencia, expuso que procede confirmar la *Sentencia* apelada.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II

### A

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es

examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

Se incurre en prejuicio, parcialidad o pasión, cuando la persona juzgadora actúa motivada "por inclinaciones personales de

tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". *Pueblo v. Hernández Doble*, 210 DPR 850, 864-865 (2022). Además, "el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022). De otra forma, únicamente se alterará el dictamen del tribunal de instancia en una circunstancia de error manifiesto cuando, de un examen detenido de toda la prueba, este foro esté convencido que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios de escaso valor o inherentemente improbables o increíbles. *C. Brewer PR, Inc. v. Rodríguez*, 100 DPR 826, 830 (1972).

Los foros apelativos únicamente sustituiremos el criterio del tribunal de instancia cuando, a la luz de la prueba admitida, no existe base suficiente para apoyar su determinación. *Ortiz Ortiz v. Medtronic*, supra; *Pueblo v. Hernández Doble*, supra, en la pág. 865. Por su parte, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2 dispone que: "Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". Esto, puesto que el Tribunal de Instancia está en mejor posición para aquilatar la prueba testifical que tiene ante sí y apreciar el comportamiento de la persona testigo. *Ortiz Ortiz v. Medtronic*, supra; *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Puesto que "la tarea de adjudicar

credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento de [la persona] testigo mientras ofrece su testimonio y escuchar su voz". *Dávila Nieves v. Meléndez Marín,* 187 DPR 750 (2013). No obstante, los tribunales apelativos nos encontramos en la misma posición del Foro Primario para evaluar la prueba documental o pericial. *Íd.*

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado,* 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

**B**

En nuestra jurisdicción, un contrato "es un negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Artículo 1230 del *Código Civil de Puerto Rico de 2020,* Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 9751. En particular, por el contrato de compraventa, la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta a su vez se obliga a pagarle un precio cierto. Artículo 1274 del *Código Civil de Puerto Rico de 2020,* 31 LPRA sec. 9941.

Ahora bien, en este tipo de contrato, el vendedor está obligado a la entrega de la cosa y al saneamiento de la cosa vendida. *Rodríguez v. Guacoso Auto,* 166 DPR 433, 439 (2005). En esta obligación de saneamiento, el transmitente responde tanto por evicción como por los defectos ocultos del bien, aunque los ignorase. Artículo 1261 del *Código Civil de Puerto Rico de 2020,* 31 LPRA sec. 9851. El mencionado saneamiento por defectos ocultos contempla situaciones en que se evidencian en la cosa defectos que exceden imperfecciones menores esperadas de un producto determinado, en momentos posterior a la entrega. *Polanco v. Cacique Motors,* 165 DPR 156, 166 (2005); *DACO v. Marcelino Mercury Inc.,* 105 DPR 80 (1976). Dicho lo anterior, esta obligación de saneamiento se puede aumentar, disminuir o suprimir por las partes. Artículo 1262 del *Código Civil de Puerto Rico de 2020,* 31 LPRA sec. 9852. Sin embargo, la disminución o supresión de la responsabilidad es inválida si la parte transmitente incurre en dolo. *Íd.*

Por otro lado, nuestro Código Civil dispone, en su Artículo 1267, que el vicio redhibitorio es el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquiriente no lo habría adquirido o habría dado menos por él. 31 LPRA sec. 9871. Siendo el propósito de la venta al adquirir la cosa, el servirse de ella, dicho propósito dejaría de realizarse si una vez entregada la cosa, se ve privado de esta o imposibilitado de aplicarla a los usos que le son propios. *García Reyes v. Cruz Auto Corp.,* 179 DPR 870, 890 (2008); *Ferrer v. General Motors Corp.,* 100 DPR 246 (1971). En estos casos de vicio redhibitorio, el adquiriente tiene derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo. Artículo 1263 del *Código Civil de Puerto Rico de 2020,* 31 LPRA sec. 9853.

Cabe puntualizar que el dolo grave es la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. Artículo 292 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 6211. Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra. *Íd.* "Además, constituye dolo el callar sobre una circunstancia importante respecto al objeto del contrato". *Bosques v. Echevarría*, 162 DPR 830, 836 (2004); *Márquez v. Torres Campos*, 111 DPR 854 (1982). En casos de venta de vehículos de motor usados, un accidente del vehículo y una reparación posterior son elementos esenciales que el comprador tomaría en consideración al momento de contratar. *Bosques v. Echevarría*, supra, pág. 837.

Dicho lo anterior, cuando hay varias personas causantes de un daño por actos independientes de culpa o negligencia, la responsabilidad frente al perjudicado es solidaria. Artículo 1539 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 10804. Sobre el particular, nuestro Más Alto Foro ha expresado que "quienes ocasionan un daño son responsables solidariamente ante el agraviado por la sentencia que en su día le resulte favorable a este último". *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 376 (2012); *García v. Gobierno de la Capital*, 72 DPR 138 (1951).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

Por la naturaleza de los errores, nos parece pertinente comenzar con la discusión del segundo señalamiento de error. En este, la apelante plantea que erró el foro primario al realizar determinaciones de hechos cuya prueba no desfiló en el juicio, ni fue estipulada por las partes.

Como es sabido, a través de las determinaciones de hechos, un Tribunal dictamina los hechos que resultan probados de la evidencia presentada y los enumera. Así, está en posición de dirimir cualquier conflicto que haya existido sobre esos hechos en la prueba presentada por las partes. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 419. En ese sentido, el foro primario, según la prueba presentada en juicio, coligió que al momento en que la apelada adquirió el vehículo de motor, este no estaba en excelentes condiciones. Además, luego de evaluar la totalidad de la evidencia, particularmente el *Acuerdo* suscrito entre las codemandadas, tomó conocimiento de que dicho documento no cumplió con los requisitos en ley para realizar un traspaso de vehículo de motor. Por ello, razonó que la apelante era la dueña del vehículo, que siempre lo fue y que, con la ayuda de Soto Rivera, consiguió vender el automóvil a un tercero.

A base de lo anterior, el foro primario formuló unas determinaciones de hechos pertinentes a la discusión del segundo error, que fueron señaladas por la parte apelante. A continuación, las detallamos, según se desprenden de la *Sentencia* apelada:

[...]

4. Para el 30 de abril de 2021, la señora Cunillera Hernández era titular del vehículo de motor marca Nissan Rouge del año 2013, por lo que cumplimentó el formulario de selección de seguro de responsabilidad obligatorio. En este documento seleccionó a la Asociación de Suscripción Conjunta como su aseguradora. A pesar de comprar el marbete en esa fecha, no pegó el mismo en el parabrisas. El marbete no se adhirió al parabrisa, porque la señora Cunillera Hernández no estaba utilizando el vehículo y no vio la necesidad de pegar el marbete.

[...]

6. En o alrededor del 18 de junio de 2021, la codemandada, señora Soto Rivera publica un anuncio de venta [de] un vehículo de motor marca Nissan Rouge del año 2013, por el precio de ocho mil quinientos dólares ($8,500.00), en la plataforma digital "Facebook Marketplace".

7. Entre la señora Cunillera Hernández, titular del automóvil, y la señora Soto Rivera existe una relación de amistad.

[...]

12. Gretchen Rosario se encontró con la señora Soto Rivera en un centro comercial de Glennview en Ponce.

[...]

14. La señora Rosario tuvo la oportunidad de manejar el vehículo por período corto en los alrededores del Centro Comercial. Durante este proceso no pudo identificar problema alguno con el vehículo.

15. Mientras la señora Soto Rivera le mostraba el vehículo a la demandante, le manifestó que no era la dueña del vehículo y que el mismo le pertenecía a su hermana quien se encontraba en los Estados Unidos continentales. Indicó que le estaba haciendo un favor a su hermana para que esta pudiera vender el automóvil.

[...]

19. El mismo día que la demandante adquirió el vehículo de motor mientras empezó a manejarlo por la autopista, notó que el eje delantero hac[í]a ruidos cuando pasaba por áreas de la carretera no niveladas (huecos).

[...]

29. El costo total de todos los desperfectos mecánicos identificados por el señor Mercado Martínez excedían los $6,000.00.[7]

De acuerdo con las determinaciones antes citadas, el Tribunal de Primera Instancia concluyó que las actuaciones de ambas demandadas fueron culposas y negligentes, causando daño a un tercero; en este caso a la apelada. Así, concluyó que existió un vicio en el consentimiento, provocado por la apelante y Soto Rivera, al ocultar la condición real del vehículo, al igual que la identidad del verdadero dueño de este y las circunstancias por las que un tercero lo estaba vendiendo.

Ahora bien, ciertos detalles esbozados en las determinaciones de hechos no surgen tal cual de la prueba oral, como la existencia de una amistad entre las codemandadas, que el encuentro entre la apelada y Soto Rivera fue en el centro comercial de Glennview en Ponce y que el costo de los desperfectos en el vehículo fue de

---

[7] Entrada Núm. 84 del Caso PO2022CV00421 en el SUMAC.

$6,000.00. No obstante, la prueba sí sustenta que las codemandadas eran conocidas de hace muchos años, pues así se desprende del testimonio de la apelante.[8] Además, de este surge que la apelada y Soto Rivera se encontraron de manera presencial, según el testimonio de la apelada.[9] También se deriva de la prueba que existían desperfectos mecánicos en el vehículo, valorados en alrededor de $8,000.00, de acuerdo con el testimonio del mecánico, quien evaluó dicho vehículo.[10]

El foro primario es quien tuvo la oportunidad de ver, escuchar y valorar los testigos ante sí, al igual de poder evaluar el lenguaje no verbal de cada testigo al testificar. Por tanto, no se debe sustituir el criterio del Tribunal de Primera Instancia, a menos que se demuestre que existió prejuicio, pasión, parcialidad o que se cometió error manifiesto. Como mencionamos anteriormente, el error manifiesto se refiere a un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Ortiz Ortiz v. Medtronic*, supra.

En este caso, el foro primario realizó ese balance racional, justiciero y jurídico de la totalidad de la prueba y, en este caso, no se demostró que el foro sentenciador haya fundado su criterio en testimonios de poco valor o inherentemente improbables. Por el contrario, el foro de instancia, en sus determinaciones de hechos, resolvió los conflictos que existían sobre los hechos del caso a base de la prueba presentada. Además, entendemos que los errores en las determinaciones de hechos no provocan un conflicto ni socavan las conclusiones de derecho realizadas por el foro de instancia. En efecto, el foro *a quo* concluyó correctamente que ambas

---

[8] Transcripción de Juicio, testimonio de Zoraya Cunillera Hernández (apelante). Entrada Núm. 2, Pág. Núm. 273 del Caso TA2025AP00626 en el SUMAC.
[9] Transcripción de Juicio, testimonio de Gretchen Rosario Silva (apelada). Entrada Núm. 2, Pág. Núm. 58 del Caso TA2025AP00626 en el SUMAC.
[10] Transcripción de Juicio, testimonio de Alberto Mercado Martínez (mecánico). Entrada Núm. 2, Pág. Núm. 26 del Caso TA2025AP00626 en el SUMAC.

codemandadas incurrieron en responsabilidad por los daños ocasionados a la apelada y los defectos ocultos del vehículo vendido. No se cometió el segundo error.

Por otro lado, en su primer y tercer señalamiento de error, la apelante plantea asuntos referentes a la responsabilidad solidaria frente a la apelada. Alegó que la prueba desfilada no estableció que la apelante participó de la transacción de compraventa y que no se presentó prueba que justificara una partida de daños por la cantidad de $10,000.00, *de forma solidaria.*

Es norma firmemente establecida que cuando hay varios causantes de un daño por actos independientes de culpa o negligencia, la responsabilidad frente al perjudicado es solidaria. Artículo 1539 del *Código Civil de Puerto Rico de 2020,* supra. En este caso, el foro primario evaluó la totalidad de la prueba presentada, documental y testifical, y concluyó que las codemandadas eran responsables solidariamente por los daños causados a la apelada. Ello, ya que el foro de instancia entendió que ambas codemandadas omitieron información esencial a la apelada, lo cual provocó un vicio en el consentimiento. En particular, resalta el que las codemandadas omitieron los desperfectos que tenía el vehículo de motor y quién era la verdadera dueña de este al momento de la venta. El foro *a quo* concluyó que, como resultado de estas actuaciones, la apelada realizó un negocio jurídico que, de otra manera, no hubiera realizado.

Esencialmente, en virtud de los señalamientos de error primero y tercero, Cunillera Hernández cuestiona que el foro primario les impusiera responsabilidad solidaria a ella y a Soto Rivera. En su argumentación, la apelante enfatiza el hecho de que Rosario Silva se enteró de la venta del vehículo a través de la plataforma "Marketplace" de Facebook, cuya publicación ella no

avaló y de la cual no participó en forma alguna, toda vez que esta fue realizada exclusivamente por Soto Rivera.

Sin embargo, luego de aquilatar la prueba desfilada durante el juicio, y formular las determinaciones de los hechos que consideró probados, el foro *a quo* concluyó razonablemente que "Cunillera Hernández era la dueña del vehículo cuando la demandante lo adquirió".[11] Asimismo, en las conclusiones consignadas en el dictamen apelado, el foro primario manifestó correctamente que, durante su contrainterrogatorio, la apelante admitió la existencia de tres versiones diferentes respecto a cómo advino a ser titular del vehículo, todas incompatibles entre sí.[12]

No obstante, y en lo pertinente a la discusión de los errores señalados por la apelante, el foro primario fue concluyente al expresar que Cunillera Hernández siempre fue la dueña del vehículo,[13] toda vez que no realizó un traspaso a favor de Soto Rivera, para que esta pudiera vender el vehículo, siendo ella la titular. Consideramos que este hecho se sustenta adecuadamente por la prueba desfilada, ya que ciertamente el *Acuerdo* suscrito por la apelante y Soto Rivera es de naturaleza privada y en modo alguno satisface los requerimientos de un traspaso de vehículo de motor.

De forma cónsona, el foro primario concluyó que Cunillera Hernández recabó la ayuda de Soto Rivera, a quien conocía, para disponer del vehículo, que tenía desperfectos, para venderlo a un tercero; en este caso, la apelada.[14] Este razonamiento formulado por el foro primario merece nuestra deferencia, puesto que consiste de conclusiones razonables que dicho foro alcanzó luego de aquilatar

---

[11] *Sentencia* apelada, pág. 18. Entrada Núm. 84 del Caso PO2022CV00421 en el SUMAC.
[12] *Sentencia* apelada, pág. 18. Entrada Núm. 84 del Caso PO2022CV00421 en el SUMAC.
[13] *Sentencia* apelada, pág. 19. Entrada Núm. 84 del Caso PO2022CV00421 en el SUMAC.
[14] *Sentencia* apelada, pág. 19. Entrada Núm. 84 del Caso PO2022CV00421 en el SUMAC.

de manera integral la prueba testifical y documental que se le presentó en el juicio.

En esencia, es importante enfatizar que la prueba demostró que la apelante intentó vender el vehículo en el mes de junio de 2021 a Soto Rivera, a través de un documento privado y, como indicáramos, no realizó un traspaso de vehículo de motor. También se demostró que la apelante era dueña del vehículo desde el año 2017 y que este no se encontraba en excelentes condiciones, contrario a lo alegado por ambas codemandadas. Además, de la prueba surge que, en menos de dos meses desde la alegada venta a Soto Rivera, esta lo vendió a la apelada, bajo el pretexto de que el vehículo era de su hermana, lo cual no era cierto. Sumado a esto, la prueba igualmente demostró que en tan solo dos semanas desde que la apelada adquirió el vehículo, este dejó de funcionar completamente.

Así, luego de tomar en consideración la totalidad de las circunstancias, el foro de instancia concluyó que la apelante, siendo dueña del vehículo, consiguió venderlo a una tercera persona, a través de Soto Rivera. En síntesis, del dictamen apelado surge que el foro primario consideró circunstancias que se sustentan adecuadamente con la prueba presentada, como los desperfectos que tenía el vehículo y su titularidad, los manejos engañosos por parte de las codemandadas y el transcurso del tiempo en que ocurrieron los hechos. Por ello, correctamente razonó que ambas codemandadas incurrieron en dolo, por lo que deben responder solidariamente frente a la apelada. No se cometió el primer ni tercer error. Por todo lo cual, procede confirmar la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones